## Thomas Morse *versus* John L. Woods.

Where a chattel, or a chose in action is pledged for  the payment of a debt,
the pledge is not released by committing the body  of the debtor to  prison
upon an execution for the debt.

When an agent is employed to receive money for his principal, he cannot ap-
propriate the money  received  to pay  what may  be due  to  him from  the
principal, without the consent of the latter.

Assumpsit for money had and  received.   The cause
was tried upon the general issue, at May  term, 1830,
when it appeared in evidence, that one  Robert Barnet,
having delivered a  note for $27, payable to himself in
whiskey, and made by one Rufus How to Abel Wells, to
be collected, and  having  taken  the receipt of Wells  to
account for the same note, sometime previous to the year
1816 delivered the same  receipt to the plaintiff to secure
the  payment of an  execution, which  had  issued on a
judgment for $44,43, rendered  in favor of the  plaintiff,
against said Barnet, in the year 1810.

How, removed to the State  of New-York, and  in the
year 1816, Wells sent the note by the defendant to an at-
torney there to be  collected,  and about the  same  time
notice was given  to Wells  by the  plaintiff and  Barnet,
that the contents of the note, when collected, would be-
long to the plaintiff.

In the year 1817, the plaintiff caused  the said Burnet
to be committed, by virtue of the said execution, to pris-
on, from which he was liberated by taking the poor debt-
or's oath.   After this the said Barnet authorised the de-

Morse
*v.*
Woods.

fendant to collect the said note, and apply the proceeds to the payment of what was due from Barnet to the defendant.

In the year 1820, the sum of $25 was collected of How, and in the year 1822 was received by W. Wells, a son of Abel Wells. The said Abel Wells directed the said W. Wells not to pay out the said money until he obtained the said receipt from the plaintiff, because he supposed the money belonged to the plaintiff. But W. Wells paid the money to the defendant, he promising to indemnify the said Abel Wells against the claim of the plaintiff. Previous to the commencement of this action, the defendant being requested to pay the said money to the plaintiff, refused.

It further appeared in evidence, that the plaintiff sent to the defendant, in the year 1824, a writing in the following words :—

"*Hartford, May* 20, 1824.

Sir—I wish you to receive my shingles coming to this market, &c. and deliver the same to Gaius Lyman, and take his receipt for the same, and please also to give him a receipt for the money he may pay on account of the shingles.        Signed,      THOMAS MORSE.

To Mr. JOHN L. WOODS,
        or SAMUEL HUTCHINS."

Upon this writing, the defendant received of Gaius Lyman in the summer of 1824, the sum of $46,32. At the time this sum was received by the defendant, there were two firms at Well's river, one known by the name of Hutchins and Goodalls, and the other by the name of Hutchins, Goodall and Woods, and the defendant was one of the last mentioned firms.

Ira Goodall was one of the partners in each of the said firms, at the said time, but in the year 1825, the said Ira sold to Samuel Hutchins, Junior, his interest in said firms, and the said Samuel has since held the same interest in the firms that the said Ira had.

The defendant having given to the said Samuel Hutchins, Junior, a release from all liabilities in this suit, called him as witness. The plaintiff objected, but he was admitted to testify, and stated that on the 23d December, 1824, an attempt was made to settle the accounts between the plaintiff and the firm of Hutchins, Goodall and Woods, and upon stating the accounts, there appeared to be a balance due from the plaintiff to that firm of $51,45, and the defendant claimed to apply the said sum of $46,32, received of Lyman as aforesaid, towards the payment of that balance, but the defendant denied that any balance was due to that company, and said that he intended the said sum of $46,32 should go to the firm of Hutchins and Goodall.

Since that time a settlement has been made between the plaintiff and the last mentioned firm, but the said sum of $46,32, was not included in that settlement. But no settlement has yet been completed as to the accounts between the plaintiff and the said firm of Hutchins, Goodall and Woods.

A verdict was taken by consent of the parties for the defendant, subject to the opinion of the court upon the foregoing case.

*Goodall, Woods* and *J. Parker,* for the plaintiff.

*Bell,* for the defendant.

RICHARDSON, C. J., delivered the opinion of the court.

Barnet, by placing the receipt of Wells in the hands of the plaintiff, made How's note a pledge for the payment of the judgment, and Morse is now entitled to recover of the defendant the sum the latter received of Wells, unless by causing Barnet to be committed for the debt, for which the note was pledged, he must be considered as having elected to abandon the pledge. 8 Johns. 96, *Brown* v. *Bemens* ; 1 B. & P. 398, *Roberts* v. *Eden* ; 10 Johns. 471, *M'Lean* v. *Walker* ; 2 Vesey, Jr. 378 ; 5 Johns. 258, *Garlick* v. *James* ; 2 Johns. C. R. 100 ; 2 Caine's Cases, 200, *Cortelyou* v. *Lansing* ; 1

Morse
*v.*
Woods.

Equity Cases Ab. 139 ; 2 Salkeld, 522 ; 5 Pick. 59 ; *Ward*
v. *Sumner* ; 1 Wilson, 260, *Ryall* v. *Rolle* ; Com. Dig.
" Mortgage ;" A. & B. ; Yelverton, 178.

The question then, is, was the commitment of Barnet
a release of the pledge ?

In the case of *Cleverly* v. *Brackett*, 8 Mass. Rep. 150, it
was decided that where a creditor received from his debt-
or a personal chattel in pledge as collateral security for
the debt, he could not cause other chattels of the debt-
or to be attached in an action for the same debt, without
first returning the pledge.   But no authority is cited in
the case to sustain the decision, and it is believed that no
case can be found that will sustain it.

In the case of the *South Sea Company* v. *Dancomb*, 2
Strange, 919, it was held that where money is lent upon
a pledge, the lender may have a remedy against the per-
son of the borrower, unless there is a special agreement
to stand to the pledge only.

And the better opinion is, that in case of a pledge, as
well as of a mortgage, the creditor may proceed against
the debtor in the same manner as if there were no
pledge, and is not bound to restore the pledge until the
debt is paid.   Yelverton, 178, *Ralcliff* v. *Davis*, note 1 ; 2
Starkie's Cases, 72 ; 2 Gallison, 157 ; 7 Mass. Rep. 63,
*Carey* v. *Prentiss* ; 4 Mass. Rep. 247 ; 10 Johns, 482 ; 3
D. & E. 342 ; 1 Shoales & Lefroy, 176.

We are, therefore, of opinion, that the plaintiff is en-
titled to recover the sum, which the defendant received
of Wells.

With respect to the money which the defendant re-
ceived of Lyman, there is nothing in the case which
shows that the plaintiff intended it, or that the defend-
ant understood it, as a payment of any debt due from the
plaintiff.  The money must then be considered as receiv-
ed by the defendant as the agent of the plaintiff, and the
defendant has no right to make any appropriation of it
without the consent of the plaintiff.

When a payment has been made generally, without any particular appropriation by him who pays, he who receives may appropriate. 3 Starkie's Ev. 1091 ; 2 B. & C. 65, *Simpson* v. *Ingham* ; 1 Merivale, 604. But this is not a case of payment, and the rule does not apply.

It is, therefore, the opinion of the court, that the verdict must be set aside, and a verdict to be taken for the plaintiff for the amount of the two sums which the defendant has received.