## MERRIMACK COUNTY BANK *vs.* BROWN & a.

The fact that the sureties on a note assented to several requests of the principal for delay, is not evidence, standing alone, on which the jury may find their assent to subsequent delays upon the same note.

Merrimack Co. Bank *v.* Brown.

Where a surety is discharged by a contract for delay, made between the creditor and the principal without his assent, his subsequent promise to pay the debt, without knowledge of the circumstances, and without any new consideration, will not bind him.

Where a creditor has a mortgage to secure two or more notes, on some of which the mortgager is principal alone, and on another he is joint principal with another person; the creditor cannot apply the proceeds of a sale of the mortgaged premises in payment of the whole of the note in which the two are joint principals, to the prejudice of the sureties on the other notes. The law will apply the property in the first place to the payment of the actual debt of the mortgager.

Whether the creditor might not apply the proceeds, in the first instance, in discharge of one half of the note on which the mortgager was joint principal with the other, *quere?*

The principles of equity, respecting the application of payments, are recognized at law, so far as the nature of the proceedings will admit.

ASSUMPSIT, upon a promissory note, signed by the defendants, Jonathan Brown, and Caleb P. Brown, and by one John Brown, deceased, dated September 19th, 1836, on demand, with interest after sixty days, for $2000. The writ was dated July 29th, 1840.

On the trial it appeared that John Brown was principal, and the defendants sureties, and that this was known to the bank. Across the margin of the note, in small type, was the following printed memorandum, viz: "The bank reserves to itself the right, at any time, of collecting this note, or of extending from time to time the payment of the same, as may be convenient or agreeable to the principal, or either of the sureties;" but the jury, upon a question submitted to them by consent, found specially, that this did not come to the knowledge of the defendants previous to the time when they executed the note.

The interest had been paid upon the note, at various times, in advance, usually for sixty days and grace, but in one instance for ninety days and grace. The last indorsement of the interest in advance was made November 4, 1839, the interest being paid to January 19, 1840. In several instances this had been done upon receiving a written request for delay, signed by the defendants, copies of two of which are as

follows:—" October 29, 1836. John Brown requests the Merrimack County Bank to postpone the payment of his two thousand dollar note sixty days, with his paying the interest." On the back of this was indorsed, " We, the subscribers, fully agree to the within," which was signed by the defendants.

" To the President, Directors & Co. of the Merrimack County Bank: The subscribers request the payment of the checks on their notes postponed, by their paying the interest on the same;" which was signed by all the promisers.

Other requests in writing of a similar tenor, with the agreement of the defendants indorsed on the back, appeared to have been made during the year 1837. The last bore date December 28, 1837.

At other times, subsequently, John Brown paid the interest in advance, without any written request for delay being made.

This bank also held a note, executed by John Brown, Charles Smart, and the defendants, dated December 28th, 1836, for the sum of $1500, which had been delayed in a similar manner. On this note, John Brown and Smart were joint principals, and this was known to the bank.

The bank held another note signed by John Brown, Jonathan Brown, and one Clough. Also a note signed by John Brown and the defendants, July 18, 1836, for $380.

John Brown died January 29th, 1840. Soon after his death, the defendant, Jonathan, was at the bank, and said to the cashier that he wished the bank would be indulgent, and grant him some delay, and the notes should be paid. He was not then told that the interest had been paid in advance.

He requested a statement of the liabilities, which was made to him.

On the 24th of May, 1838, John Brown mortgaged to the bank a farm in Bow, to secure the payment of the notes of $2000, $1500, and $380. Soon after the death of John Brown, Smart agreed with Jonathan Brown that if he would pay the Clough note, on which Jonathan had security, he, Smart, would settle the rest of the debts of the bank after

the proceeds of the sale of the farm mortgaged had been applied to the payment.

On the 3d of June, 1841, the bank, having foreclosed the mortgage, sold the farm for $2800, and applied the proceeds, August 31st, 1841, to the discharge, in the first place, of the note of $1500, which was given up to Smart, he at the same time executing to the bank a bond to indemnify the bank against all losses on account of the note of $2000, on which this suit is founded, and to pay to the bank all balances due thereon which should not be paid by the signers, and also all costs of any suit for the collection of the note.

The defendants have never agreed to the application thus made of the proceeds of the farm.

A verdict was taken for the plaintiff, by consent, judgment to be rendered thereon, or the verdict to be amended, or set aside and judgment rendered for the defendants, according to the opinion of this court upon the foregoing case.

*Perley*, for the defendants. The requests for delay cannot be considered as continuing requests, and the sureties are discharged. 3 *Merivale* 278, *Samuel* vs. *Howarth ;* 2 *Johns. Ch. R.* 563, *King* vs. *Baldwin ;* 7 *Johns. R.* 332, *People* vs. *Jansen ;* 5 *N. H. Rep.* 105, *Grafton Bank* vs. *Woodward.*

No enquiry will be made whether the contract for delay was actually injurious to the sureties.

After a legal discharge of the surety, there is no equitable obligation.

Whatever promise was made by Jonathan Brown, was in ignorance of the fact of the discharge. Whatever he said was on the ground that he was legally chargeable. The promise was made in ignorance of a material fact, which goes to the whole matter, and which, from his situation, he was not bound to know, and it cannot bind him. If a lessor reserve a forfeiture, and knowing of the forfeiture receives rent, he waives it—otherwise, if he have not knowledge. 2 *D. & E.* 425, *Roe* vs. *Harrison.*

The bank may generally have a right to appropriate money in their possession to the payment of any demand they may have, if done fairly. But the appropriation here was by an arrangement to relieve Smart, taking his bond to indemnify them. This they had no right to do.

*Fowler*, (with whom was *Pierce*,) for the plaintiffs. The reception of interest here was not even *prima facie* evidence of a contract to delay. 5 *N. H. Rep.* 104, *Grafton Bank* vs. *Woodward ;* 5 *Pickering* 15, *Loring* vs. *Gurney ;* 9 *Pick.* 488, *Little* vs. *Blunt ;* 13 *Pick.* 418, *Newman* vs. *Kettelle ;* 419, *note.*

As the note is on demand, and the interest was paid in advance, the presumption of law is that when interest was again paid it was on the same terms. *Chitty on Con.* 423, *and note*, 424. The bank, in receiving interest afterwards, was only acting in fulfilment of the original agreement.

After John Brown's death, Jonathan Brown promised payment. This was an absolute promise to pay, and binding. It was a waiver of any personal right he had to a discharge. A party may waive rules of law for his own benefit. 5 *B. & Ald.* 606, *Lampon* vs. *Corke ;* 5 *Pick.* 446, *Taunton Bank* vs. *Richardson ;* 7 *East* 231, *Lundie* vs. *Robertson ;* 2 *Camp.* 105, *Taylor* vs. *Jones ; Ditto* 188, *Gibbon* vs. *Coggin ; Ditto* 168, *Crosby* vs. *Cranch ;* 8 *Pick.* 1, *Martin* vs. *Ingersoll ;* 1 *Taunt.* 12, *Horford* vs. *Wilson.* The promise was binding, also, being on a moral obligation, which is sufficient where a legal obligation has existed. 5 *Mass.* 358, *Hunt* vs. *Adams ;* 3 *Pick.* 207, *Mills* vs. *Wyman ;* 13 *Johns.* 259, *Smith* vs. *Ware ;* 16 *Johns.* 283, *Edwards* vs. *Davis ;* 1 *Cowp.* 288, *Atkins* vs. *Hill ; Chitty* on *Con.* 40 ; 2 *Saund.* 137, *d, note ;* 5 *Vermont R.* 175, *Glass* vs. *Beach ;* 4 *Vermont R.* 144, *Barlow* vs. *Smith.*

The agreements set forth in the case are sufficient to show the defendants cognizant of all that had been done. They made requests for delay at different times. If a party, with

Merrimack Co. Bank *v.* Brown.

means of knowledge of what was done, promises, he is bound. 5 *Pick.* 446. Jonathan Brown was told, in effect, that the interest had been paid ; he was told the amount of his liabilities.

Where a debtor pays without specifying any debt on which it is to be applied, the creditor has the right to make the application. *Com. on Con.* 228 ; 1 *Taunt.* 564, *Hutchinson* vs. *Bell ;* 5 *Taunt.* 596, *Peters* vs. *Anderson ;* 6 *Taunt.* 597, *Bosanquet* vs. *Wray ;* 14 *East* 243, *and note ;* 2 *B. & C.* 45, *Simson* vs. *Ingham.*

PARKER, C. J. It is settled, in this state, that a payment of interest in advance, is, in general, evidence of a contract to forbear and give day of payment for the period for which the interest is thus paid ; and a contract of that character, made between the creditor and the principal, without the assent of the surety, discharges the surety. *Crosby* vs. *Wyatt,* (10 *N. H. Rep.* 318.)

In 1837, the defendants made several written requests for delay, and thus far they continued liable, notwithstanding the contracts for delay ; but these requests have no tendency, standing alone, to show an assent to subsequent delays in 1838. Caleb P. Brown, therefore, shows a good defence.

The next question which arises, is, whether the subsequent promise of Jonathan Brown can have any operation to bind him. Upon this subject no direct authorities are found.

A promise, by an indorser of a note, who is discharged by neglect of the indorsee to make a demand and give notice, is not binding, unless there is a new consideration, or it appear that he had knowledge of the fact. 7 *N. H. Rep.* 271, *Farrington* vs. *Brown ;* 9 *N. H. Rep.* 572, *Carter* vs. *Burley ; Woodman* vs. *Eastman,* (10 *N. H. Rep.* 366.)

But no enquiry is ever made, where a debt is barred by the statute of limitations, and there is a subsequent new promise, whether the party knew that six years had elapsed or not, or whether he was aware that the statute interposed a bar.

After some hesitation, we have come to the conclusion that this case belongs to the first class. The obligation of a surety, although not like that of an indorser in some particulars, is analagous to it so far as a discharge is concerned. When the statute of limitations interposes a bar, the party knows, or should know, the time which has elapsed since he entered into the contract; but he is not chargeable with knowledge of a contract for delay, any more than an indorser is chargeable with a knowledge of a neglect to make a demand, or the drawer of a bill with knowledge of a contract to give time to the acceptor. 2 *Camp. R.* 333, *Stevens* vs. *Lynch.*

This promise, however, might perhaps be left to the jury, in connection with the requests and delays before adverted to, as evidence on which they might find that the delay had been with his assent. Time had been given in several instances, upon requests in which he united; and the interest, in those instances, was to be paid in advance. When he made the subsequent promise, after further delay, he had some reason to suppose that the further delay might have been upon a like payment of the interest.

But it is not material to consider this further, for another reason. The bank had no right to apply the proceeds of the sale of the farm which belonged to John Brown, in payment of the joint note of Brown and Smart, to the prejudice of the sureties on the other note. It is, in effect, an application of the property of Brown to the payment of the debt of Smart, he being solvent; the bank, at the same time, holding a debt against Brown, and attempting to enforce the collection of it from his sureties. Perhaps the bank might have made the application to Brown's half of that note; but the proceeds of the sale were sufficient to pay that, in addition to the note now in suit. The bank evidently had no interest which required the application which was attempted, having the same sureties on the one note as on the other; and the law, under such circumstances, will apply the mort-

gaged property in the first place to the payment of the debt of the mortgager, and the exoneration of his sureties, and not to the payment of that portion of the indebtedness on which he was in truth a surety for Smart. 8 *Pick.* 503, *Sargent* vs. *McFarland.*

This is not a payment within the principle authorizing the creditor to make an application. 10 *Pick. R.* 133, *Blackstone Bank* vs. *Hill.* If it were so, the cases in which the law controls his right to apply a payment, in favor of the equitable rights of others, go much farther than this. 4 *Johns. Ch. R.* 132, *Hayes* vs. *Ward; 5 Johns. Ch. R.* 235, *Clowes* vs. *Dickinson; Hopkins' Ch. R.* 469, *York & Jersey Co.* vs. *Jersey Co.; 1 Paige's Ch. R.* 228, *James* vs. *Hubbard; 19 Johns. R.* 492, *Evertson* vs. *Booth.*

The principles of equity respecting the application of payments are recognized in proceedings at law, as far as the nature of the proceedings will admit. 18 *Wend. R.* 591, *Reynolds* vs. *Tooker; 9 Cowen* 403, 405, *Clowes* vs. *Dickinson, on appeal; 3 Stark. Ev.* 1093, *note* 1.

In the view we have taken of the case, it is not necessary to place any stress upon the fact, that this attempt to apply the mortgaged property, in the first instance, to the payment of a debt, one half of which was in fact the debt of Smart, was made at the request of Smart, and upon his giving an indemnity, and this after he had agreed with Jonathan Brown that if the latter would pay the note which was signed by Clough, he would settle the rest of the debts after the proceeds of the farm had been applied in payment. The principle of *Watts* vs. *Wellman,* 2 *N. H. Rep.* 458, might perhaps serve to show that he was afterwards, as between Jonathan Brown and himself, to be regarded as the principal debtor upon the other notes, and that no action could be maintained, for his benefit, to recover of Jonathan Brown a debt which he, himself, had contracted to discharge.

*Verdict set aside, and judgment for the defendants.*