# STRAFFORD,

## DECEMBER TERM, A. D. 1843.

## CALDWELL *vs.* WENTWORTH.

No cause of action accrues by reason of sales of spirituous liquors, the party having no license to sell as required by the statute.

But if payments have been made on account of such illegal sales, the purchaser can not afterwards rescind them, nor insist upon their being applied to other and legal charges.

A debtor paying money to a creditor who has several claims against him, may direct the application of the payment to which claim he pleases.

If the debtor make no such application, the creditor may, at the time, apply it to any demand then due and payable.

Whether he may make the application at any time before suit, *quære?*

But this right extends only to lawful claims.

Where neither of the parties make the application, the law will, where there is no particular equity or reason for a different course, apply the payment to the earliest debt.

One exception to this rule is, that if the earliest debt is not due and payable at the time of the payment, the law will apply it to the debt which had a later origin, but was then due.

Where two charges of unequal amounts exist, the one legal and the other illegal, but the former not being then due and payable, and a payment is made generally upon account, if such payment be of no greater amount than the illegal claim it will be taken to have been paid upon the illegal claim, although not specially so directed.

ASSUMPSIT, founded upon the account annexed, as follows, viz. :

Jacob Wentworth to Abner Caldwell, . . Dr.

| 1839. | | | | |
|---|---|---|---|---|
| May 9, | To 107 galls. Rum, a .38, | | | $40.66 |
| July 8, | " 107 | " | " | 40.66 |
| Aug. 8, | " 107 | " | " | 40.66 |
| Sept. 3, | " 53 pounds Saleratus, 7, | | | 3.71 |

Caldwell *v.* Wentworth.

| | | |
|---|---|---|
| Sept. 12, To 107 galls. Rum, | | $40.66 |
| Oct. 17, " 107 " " | | 40.66 |
| " 25, " 116 gs. do. molasses, .33, | | 38.28 |
| | | $245.29 |

1839. Cr.

| | | |
|---|---|---|
| July 6, By 1 molasses Hhd., | .50 | |
| Sept. 10, By cash pr. receipt, | 50.00 | |
| " Hhds., | .50 | |
| Nov. 6, " cash receipt, | 50.00 | |
| 1840. | | |
| Jan. 3, " " " | 50.00 | |
| | $151.00 | $151.00 |

It appeared that the plaintiff, when he sold the defendant the two first quantities of rum charged in said account, had a license from the selectmen of the town where he resided, authorizing him to do so, but had none when he sold the other quantities of rum charged in said account.

It appeared in evidence that John Brown commenced carrying on the grocery business in Dover, as agent of the defendant, and under his direction, in 1834, and so continued till the year 1840. At the time the business was commenced, the defendant went with Brown to the plaintiff and several other persons, and verbally directed them to let Brown have goods when he called for them, and charge them to him, as he was going to put Brown into a store to sell goods as his agent. In pursuance of the defendant's directions, Brown purchased goods of the plaintiff and others. Brown testified that he purchased the goods at cash price, and was to pay for them as fast as he could collect in money, and that when he made the payments he intended they should go to pay the oldest debts or charges, but did not know whether there was anything said about it between the plaintiff and himself; that when the purchase of the last hogshead of molasses was made, he inquired of the plaintiff what he

Caldwell *v.* Wentworth.

asked for molasses, and the plaintiff replied, 33 cents; that he told the plaintiff that he " could purchase for that in Boston on four months," and the plaintiff replied, " I will use you as well as any body else ;" and thereupon he took the molasses.

The court instructed the jury that the sales of rum, while the plaintiff had no license therefor, were illegal, and that they could not be recovered in this action ; but, although the sales were illegal, if the defendant chose to pay for them, and did so, he could not now revoke the act, and claim that the money should be applied to the payment of other charges ; and as Brown was the agent of Wentworth, he could bind his principal in all legal contracts within the scope of his agency, but no farther without special authority. If, therefore, Brown undertook to dispose of the money of his principal to pay an illegal claim, without any express authority to do so, or without the knowledge or assent of the principal, it would not bind the principal, but he might afterwards claim that the money should be applied upon the part of the account legally due. That the jury could not presume that the agent was authorized so to pay an illegal claim, but the plaintiff must show either that the principal had given him express authority so to do, or that he had assented to it, with a full knowledge of the facts.

The plaintiff requested the court to charge the jury, that if the defendant rejected the act of the agent Brown, in paying the money towards the rum illegally sold, he must reject the act of payment altogether, and had no right to claim the application of the credit as a payment of the account ; and that if there was a credit of four months on the sale of the molasses, the presumption is that all payments made before the expiration of that credit were made on other parts of the account, and, though made by the agent without authority, (because those other parts of the account were illegal,) they cannot be applied as payments of the charge of molasses.

But the court declined so to charge, and instructed the jury

that though the defendant might avoid the contract of Brown to pay the illegal charges, yet finding the money in the plaintiff's hands credited to him, he had a right to apply it and treat it as a payment towards the legal charges.

*White,* and *J. Bell,* for the plaintiff. We except to the part of the charge that without express authority Brown could not appropriate to an illegal claim. In case of an express application by the creditor, the law cannot change it or make any other.

If the debt is not due, to which the debtor undertakes to apply a payment, it is a payment by a mistake, and he may reclaim the money. If, however, the demand against him were merely illegal, the party can not reclaim. If there be no express application, but the circumstances are such as raise an inference of intention, the rule is the same. *Chitty on Con.* 752.

Where the account consists of several items, the application is to be made to the earliest. 2 *Barn. & Ald.* 45 ; 12 *Moore* 37 ; 5 *Bingh.* 13 ; 9 *Cowen* 435 ; 9 *Wheat.* 720.

The ground taken by the court at the trial was, that the agent had no authority to make payments on account of illegal charges. If the agent had no power to make payments, then the payments are out of the case. He must reject the whole, if he would part. If he adopts the act of payment, he adopts the application. The other side say that the money is the money of the debtor, and he has the right to apply it to what was due. The illegality of the claim is evidence to be submitted to the jury, along with other evidence, to show what application was intended to be made. These payments will over-pay the admitted legal charges. *Story's Agency* 185. The authority to do an illegal act may be either express or implied. 3 *Mass.* 434.

The application is properly made to the earlier items, as above stated, unless some other intention appear ; but if the intention can be collected from circumstances, the application

is considered as already made.   7 *D. & R.* 201 ; 3 *Caines* 14.   In the case last cited, the debtor owing two debts, made a payment of the exact amount of one, and it was held that the creditor could not apply it to the other.

*J. H. Wiggin,* and *Hale,* for the defendant.   This suit is to recover the balance of an account which contained illegal charges which the party is not bound to pay.   If the whole was made up of illegal charges, the plaintiff could not recover, nor can he now recover for those which are illegal.

An agent has no authority to make an illegal contract, nor to pay for illegal charges.   *Story on Agency* 199 ; 2 *N. H. Rep.* 194.

The plaintiff having entered these payments as a general credit, cannot now come in and apply them to particular charges.   A general credit can not be appropriated to illegal charges.   *Cro. Eliz.* 68.

Where a party owes two debts, one by bond, and one by simple contract, and no application of a payment is made by the debtor, the creditor *may* apply it.

If our statute prohibited the sale of rum, the sale was illegal, and the party cannot recover.

*Bell,* in reply, said that the plaintiff had no occasion to controvert any of the positions taken by the other side. Here the creditor had no right of election ; the position is, that the *debtor* made an application.   2 *Ad. & Ellis.* 41 ; 2 *B. & Cress.* 65.

PARKER, C. J.   In relation to the first two items of the plaintiff's account, the sale was lawful, being made under a license, and for these and for the items for saleratus and molasses, which were lawful subjects of sale, if the plaintiff has not already received payment, he is entitled to recov-

er. The sales of rum in August and September, 1839, when the plaintiff had no license, were within the prohibition of the statute, and for that part of the account no cause of action ever accrued to the plaintiff. 10 *N. H. Rep.* 377, *Pray* vs. *Burbank*; *Ante p.* 294, *Lewis* vs. *Welch*; *Carthew* 252, *Bartlett* vs. *Vinor*; 1 *B. & Pul.* 264, *Ribbans* vs. *Crickett, and cases cited*; 1 *M. & S.* 593, 596, *Langton* vs. *Hughes*; 8 *B. & C.* 553, *Helps* vs. *Glenister*; 5 *B. & Ad.* 887, *Forster* vs. *Taylor*; 3 *Taunt.* 226, *Scott* vs. *Gillmore.*

But if the defendant has voluntarily paid for the rum thus illegally sold, he cannot now insist that the payment shall be rescinded, and the money applied to the legal claims against him. So if payments have been made under such circumstances as show that they were intended as payments towards the rum, the application cannot lawfully be changed so as to discharge the legal indebtedness.

There is no question upon the facts that the defendant, through his agent Brown, who purchased the articles, has made three payments of cash to the plaintiff upon account, besides delivering some hogsheads for the same purpose. The defendant having authorized Brown to act as his agent in making the purchases, and in making payments also, must be bound by his acts. The act of purchase was not prohibited, although the sale was so by reason of the penalty imposed upon the vendor, and there is no principle rendering it illegal to pay a claim which can not be enforced by reason of its illegality. The case stands, therefore, as if the purchases and payments had been made by the defendant himself.

If at the time when Brown paid any of those sums he had directed the money to be applied to the discharge of any particular item of the account; the plaintiff, receiving it with such directions, would have been bound to apply it accordingly. 2 *Verm.* 283, *Briggs* vs. *Williams*; 1 *Mason* 323, 338, *Cremer* vs. *Higginson*; 9 *Wheat.* 720, 737, *U. States*

vs. *Kirkpatrick ;* 12 *S. & R.* 301, 305, *Harker* vs. *Conrad ;* 2 *B. & C.* 65, 72, *Simson* vs. *Ingham.*

A debtor paying money to a creditor who has several claims against him, may direct the application of the payment to which claim he pleases. The creditor can not apply what he thus receives against the will and directions of him who makes the payment, and who has at the time a right to control what is then his own. *Cro. Eliz.* 68, *Anonymous ;* 5 *Co. R.* 117, *Pinnel's case ; Style* 239, *Bois* vs. *Cranfield ;* 12 *Wheat.* 505, *U. States* vs. *Nicholl ;* 5 *Mason* 82, *U. States* vs. *Wardwell ;* 5 *Taunt.* 596, *Peters* vs. *Anderson.* There is no evidence, however, in this case, that Brown gave any express direction respecting the application of the payments.

Another rule is, that if the debtor makes no application of the payment, the creditor may at the time apply it to any demand due from the debtor. 5 *N. H. Rep.* 297, 301, *Morse* vs. *Woods ;* 2 *Caines* 99, *Mann* vs. *Marsh ;* 2 *Vernon* 606, *Manning* vs. *Westerne ;* 8 *Modern R.* 236, *Anonymous ; Andrews* 55, *Bowes* vs. *Lucas ;* 2 *Strange* 1194, *Goddard* vs. *Cox ;* 2 *B. & C.* 65, *Simson* vs. *Ingham ;* 4 *Cranch.* 317, 320, *Alexandria* vs. *Patten.* And of course to the worst secured demand. 5 *Taunt.* 596, *Peters* vs. *Anderson ;* 10 *Conn.* 181, *Fairchild* vs. *Holly ;* 15 *Conn.* 440, *Stamford Bank* vs. *Benedict.* It has been held that the creditor may make the application at any time before suit, but this is, perhaps, not quite clear. 9 *Cowen* 765, *Pattison* vs. *Hull.* But the right of the creditor to apply a payment made generally to which claim he pleases, extends only to lawful demands. 2 *Greenl. Ev.* § 533, *p.* 439, *and cases cited at note* 5. If he have two claims, one of which is legal and the other illegal, he has no right even at the time of payment, to apply the payment to the illegal claim. 3 *B. & C.* 165, *Wright* vs. *Laing.* The suggestion thrown out in *Hilton* vs. *Burley,* 2 *N. H. Rep.* 193, as to the application of payments, so far as they relate to *illegal* charges,

cannot be sustained. But there is no evidence in the present case that the plaintiff has at any time made any special application of these payments.

Another rule which has been laid down is, that if no application of the payment be made at the time by either debtor or creditor, the law will make the application. 13 *Verm. R.* 15, *Emery* vs. *Tichout.* Some decisions say to the earliest debt. 10 *Conn. R.* 175, *Fairchild* vs. *Holly, and cases cited;* 3 *Phillips' Ev.* 131, (*note* 9.) Following out his principle in *Bosanquet* vs. *Wray,* 6 *Taunt.* 597, the creditor was permitted to apply the payment to a purely equitable debt, and to sue at law for the later legal debt. Other decisions qualify this rule respecting the application to the earliest debt. Particular equities have a precedence, and the principle may be stated to be, that where there is no particular equity or reason for a different application, the law will apply the payment to the earliest debt. 1 *Cromp. & Meeson.* 33, *Goddard* vs. *Hodges;* 3 *Tyrr.* 209, *S. C.;* 3 *Phil. Ev.* 131, (9); 1 *Ld. Raym.* 286, *Meggot* vs. *Mills;* 2 *Brod. & Bing.* 73, *Brooke* vs. *Enderby;* 2 *Greenl. Ev.* § 535; *Chitty on Con.* 755. Some cases hold, in favor of a surety, that such an application shall be made as will be for his benefit. 2 *Stark. R,* 101, *Marryatts* vs. *White;* 12 *N. H. Rep.* 327, *Merrimack Co. Bank* vs. *Brown;* 13 *Verm. R.* 17, *Emery* vs. *Tichout;* 7 *Dow. & Ryl.* 201, *Shaw* vs. *Picton;* 2 *Greenl. Ev.* § 529, *note.* Other cases hold, that for the benefit of the creditor, the application shall be made to the debt least secured. 1 *Pick.* 332, *Brewer* vs. *Knapp;* (*Ditto, notes, Rand's Ed.;*) 4 *Pick.* 314, *Dedham Bank* vs. *Chickering;* 2 *N. H. Rep.* 193, 196, *Hilton* vs. *Burley;* 6 *Cranch.* 8, 28, *Field* vs. *Holland;* 7 *Cranch.* 572, *United States* vs. *January;* 5 *Mason* 87, *note, S. C.* Perhaps these two classes of cases do not present any conflict in principle, although one is in favor of the creditor as against the debtor, and the other favors the surety at the creditor's expense. They may well stand together, applying the last

to those cases where there is no surety. They constitute exceptions to the rule applying the payment to the earliest debt, but the present case raises neither of these exceptions.

Another exception or principle is, that if the earlier debt is not due and payable at the time of the payment, the law will apply it to the debt which had a later origin but was then due, upon the obvious presumption that the one party intended to pay, and the other must have understood that he was receiving the money in discharge of something which the creditor had the right to claim at the time. 5 *Mason* 11, *McDowell* vs. *The Blackstone Canal Co.* ; 3 *Sumner* 112, *Gass* vs. *Stinson* ; 9 *Cowen* 775, (*note*,) *Pattison* vs. *Hull.* Divers other rules upon this subject have been settled by judicial decisions applicable to different classes of cases, which are, however, not material to our present purpose.

Upon the principles which have been stated, the law will apply the payments in this case to the first two items of the account, for two reasons ; they are the earliest claims, and they are legal charges. The plaintiff would have been precluded from applying the payments to the subsequent charges for rum sold in August, September and October, 1839, when he had no license, and leaving the earlier legal indebtedness, or part of it, unsettled, had he attempted at the time to make that special application, because of the illegality of those items of charge. But the amount of the payments is more than sufficient to discharge the first two items of the account, and the remaining question is, whether the balance, or rather whether the last payment can be applied to the charge for molasses, which is the last item in the account. If it may be, it will more than cover the amount of that charge. Whether it can be so applied must depend upon the question whether the money was due for that charge when the last payment was made. If it was due then, the law will apply a sufficient amount of it to that as a legal claim, and the plaintiff can not recover.

There is evidence in the case tending to show that the sale of the molasses was upon a credit of four months. If such be the fact, the money was not due at the time even of the last payment; and the law cannot apply the payment to that item, for the reason that it was not due. The plaintiff could not have done so. In making the payment the defendant gave no special directions respecting its application. It was a payment and not money advanced, and the circumstances under which it was paid may show an application to a certain extent.

The question, then, comes to this; do not the circumstances show that the defendant, although he gave no special directions respecting the application, made the payment upon that part of the account which was then payable according to the dealings of the parties, without reference to the legality or illegality of the items? If he did, and the plaintiff so received it, the application has been made to that extent by the parties; and the law, although it may make any application of the payments within the limits of the claims which were due, cannot, against the intention of the parties, apply them to demands without those limits. That is, although as between the claims which were payable, the law may apply the payments in the first place to the legal claims, yet it cannot consider the claim not due as within the range of the payment, and must therefore leave the balance as a payment made in fact upon the illegal claim.

It certainly can not be pretended that the defendant intended to make a payment upon a debt not due when there were claims existing and payable, which, although illegal, he had not then objected to. Still less can the creditor in this case be supposed so to have received it. In the language of the court in *McDowell* vs. *The Blackstone Canal Co.*, 5 *Mason* 11, " the obvious presumption is, that the one party intended to pay, and the other must have understood that he was receiving the money in discharge of something that the creditor had a right to claim at the time." The

Caldwell *v.* Wentworth.

fact that a part of the items were for illegal sales does not rebut the presumption, and there is nothing else in the case that has such a tendency. The case is within the principle of *Stamford Bank* vs. *Benedict*, before cited. See, also, 1 *Moody & Rob.* 100, *Cruickshanks* vs. *Rose;* 13 *Verm.* 15, 17, *Emery* vs. *Tichout.*

The conclusion to be drawn would be perfectly clear if the account had consisted of but two items, one for rum sold illegally, but for which according to the contract the money was due, and the other for molasses lawfully sold, but on a credit which had not expired. A payment made generally upon account under such circumstances, if of no greater amount than the illegal item, must be understood and deemed to be intended and received as a payment upon the illegal claim, notwithstanding there were no special directions so to apply it, and the law could not afterwards appropriate it to the legal indebtedness. The principle is equally applicable in the present case, and for this reason there must be a new trial, in which if there be any doubt of the fact, the question whether the molasses was sold upon a credit may be farther investigated.

*Verdict set aside.*