## SAWYER, Admr., vs. TAPPAN.

The defendant gave the plaintiff a receipt for money, to be applied on a note.— *Held*, that an action could not be maintained for the money, until the defendant had been requested and had refused thus to apply the money.

In an action by an administrator to recover a debt due the intestate, the son, and heir at law of the deceased, is not a competent witness for the plaintiff.

The defendant gave the plaintiff a receipt, stating that he had received $150.00 "on note."—*Held*, that the statute of limitations did not begin to run until the defendant had been requested and had refused thus to apply the money.

Where a person owes several debts, and pays money to his creditor, without any specific appropriation of it, the creditor may apply it in payment of whichever debt he pleases.

The defendant held a note against the plaintiff, and also held notes against a person deceased, of whose estate the plaintiff was administrator. The deceased left property, some of which was sold by the plaintiff, who paid the defendant $150.00, for which he took a receipt, stating that it was received "on note."—*Held*, that as the plaintiff was not personally liable for the debt against the estate, the defendant had no right to apply the money in satisfaction of it, but that it should be applied on the personal debt of the plaintiff.

ASSUMPSIT. A verdict was taken for the plaintiff, subject to the opinion of this court upon the following case.

The action is brought by Jerome Sawyer, administrator *de bonis non* of the estate of Jabez Sawyer, to recover two hundred dollars, money had and received by the defendant, to the use of the plaintiff's intestate. The writ is dated on the 28th day of February, 1843, and was served in March, 1843. The defendant pleaded the general issue and the statute of limitations, that the cause of action did not accrue to the plaintiff within six years before the commencement of the suit. The plaintiff offered in evidence a receipt, of which the following is a copy: "January 16th, 1837. Received from Mr. Jabez Sawyer, by the hand of Mr. William Sawyer, the sum of one hundred and fifty dollars, on note." (Signed :) "Weare Tappan." At the date of this receipt the defendant held a note, signed by Jabez Sawyer and others, dated on the 23d day of November, 1830, for $300.00, with a new promise in writing thereon, dated on the 29th

day of August, 1836, and on which the interest was indorsed to the 20th day of December, 1833. Also a note dated on the 16th day of March, 1832, for $116.83, on which the interest was indorsed to December, 1833, and $3.83 of the principal.

The defendant also held four notes against the estate of Joseph Presby, the younger, late of Bradford, who died in September, 1828, of which estate Jabez Sawyer was the administrator, having been appointed on the 21st day of October, 1828. Jabez Sawyer died in March, 1837, and in April, 1837, Hannah Sawyer was appointed administratrix of his estate. Of the above mentioned four notes, one was dated on the 18th day of March, 1827, for $100.00, on which the interest for three years was indorsed, and also on the 16th day of January, 1837, the sum of $150.00, received "from Jabez Sawyer, admr., by the hand of Wm. Sawyer, for which gave a receipt—$140.98 paying this note, balance indorsed on other notes." One note was dated June 14th, 1828, for $12.78, on which, on the 16th of January, 1837, was indorsed the sum of $9.02. One note was dated on the 31st day of March, 1827, for $9.50, and the remaining note was dated on the 19th day of July, 1828, for $50.00. On the 29th day of December, 1837, Hannah Sawyer and Jerome Sawyer paid the note for $300.00 and the note for $116.83, and gave the defendant their joint and several note for $385.00.

Frederick Sawyer, the son and heir of Jabez Sawyer, was offered as a witness by the plaintiff. He stated that in the fall of the year 1839 he was present at the defendant's office, when the plaintiff, acting as agent of Hannah Sawyer, the administratrix, requested the defendant to allow the receipt before mentioned on the note for $385, but the defendant refused so to do, saying it would be hard for him to lose his debt against the estate of Presby. The defendant objected that this witness was incompetent. Another witness for the plaintiff testified that some time in the year 1838 he called on

the defendant, at the request of Jerome Sawyer, for the purpose of seeing the notes which the defendant held against the Presby estate, and that the indorsement of January 16th, 1837, was not on them; but that he knew of the existence of the receipt. Whether he was informed of it by Sawyer or by Tappan he did not recollect. Cressy, a witness for the defendant, testified that Jabez Sawyer, as administrator of Presby, began to sell the personal property on the 9th day of December, 1828, and sold enough to amount to about $400. In the month of June, 1830, he assisted Sawyer in making a schedule of claims against the estate, and Sawyer obtained a license to sell real estate sufficient to raise the sum of $300; and in the fall of 1830 or 1831 he sold enough to raise $200. The largest claim against the estate was in favor of the defendant, and that amounted to $200 or thereabouts. Since the sale of the land, and before Sawyer's death, he said he did not think he should sell any more land, for Tappan would wait until the balance could be raised from the income of the farm, which is a valuable one of over one hundred acres, with a good proportion of tillage, a large orchard, and on which are cut forty tons of hay yearly. Ebenezer Sawyer, a witness for the defendant, testified that he had often heard his brother Jabez say that there was a debt due from the Presby estate to the defendant, and that he should be obliged to sell more land in order to settle with him, or pay him from the rent of the farm, or in some other way, and that Tappan could wait well enough.

Upon these facts the defendant contended that the cause of action did not accrue within six years, and that the money mentioned in the receipt was applied, as the defendant had a right to elect, within the terms of the receipt. Both these positions were overruled by the court.

*Bartlett*, for the defendant. Our first position is, that the defendant had a right to apply the $150 on the Presby note, as the administrator had assets and a license to sell. Where

a debtor owes different debts, and makes a payment, the creditor may apply the payment, if made generally, to the satisfaction of either debt. 2 *N. H. Rep.* 196, *Hilton* vs. *Burley;* 5 *N. H. Rep.* 301, *Morse* vs. *Woods;* 5 *Taunt.* 596, *Peters* vs. *Anderson;* 2 *B. & C.* 65, *Simson* vs. *Ingham;* 9 *Cowen* 435, 765; 1 *Howard* 250, *U. S.* vs. *Eckford's Executors;* 23 *Pick.* 473, *Allen* vs. *Kimball.* The only ground upon which the present case can be distinguished from those cited, is, that one debt was due from Sawyer as executor. There is one case which contains a contrary doctrine, on the ground that the executor had or might have no assets. 2 *Strange* 1194, *Goddard* vs. *Cox.* In this case the administrator was authorized to sell, and had assumed the debt.

Secondly, as to the statute of limitations. The receipt is dated January 16th, 1837. The writ bears date on the 28th day of February, 1843, and was served in March. The cause of action accrued when the money was paid. *Wilkinson on Lim.* 45; *Blanshard on Lim.* 104. Where the statute has once begun to run, it is not suspended. 1 *Johns.* 165, *Peck* vs. *Randall's Trustees.*

Thirdly: Frederick Sawyer is the son and heir of Jabez Sawyer, and is incompetent to testify. 9 *Pick.* 358, *Hawes* vs. *Humphrey;* 1 *Salk.* 283, *Smith* vs. *Blackham;* 1 *C. & P.* 253, *Rudge* vs. *Ferguson;* 5 *Johns.* 427, *Phœnix* vs. *Assignees of Ingraham;* 2 *Pick.* 242, *Marland* vs. *Jefferson.*

*Pierce*, for the plaintiff. The indorsement was made long after the time it purports to have been made.

The statute of limitations did not begin to run until the plaintiff could sue. When could Sawyer have maintained a suit? Not until after the defendant had refused on demand to indorse the amount on the note of the intestate. When was the contract broken, and when was the sum of $150 to be allowed on the note? On demand; and no demand was made until 1839, when the indorsement was made at the

request of Hannah Sawyer. There was no settlement concerning the note until December, 1837, and the note may be construed as a promise to account when the note should be settled.

As to the application of the payment, we have no doubt as to the general principle ; but Tappan had no right to make the application, because the Presby note was due from Sawyer as administrator. *Chitty on Cont.* 583 ; 2 *Strange* 1194.

The language of the receipt implies that the money was paid on a note, and on one equal to or greater than the amount of the receipt, which was Sawyer's own note for $300. 14 *East* 239, 243, (*n*,) *a* ; 5 *Taunt.* 596; 4 *B. & C.* 715. There was but one note on which the amount could be applied, and the creditor, having elected the mode of the application, is bound by it. 2 *B. & C.* 65, *Simson* vs. *Ingham ;* 3 *Bing.* 76. The Presby notes were then barred by the statute, and the law raises a presumption that they were paid. The presumption is that the money was paid on a claim that could be enforced.

GILCHRIST, J. The general rule is, that where a person owes several debts, and pays money without any specific appropriation of it, the creditor may apply it to which debt he pleases. *Peters* vs. *Anderson, 5 Taunt.* 596 ; *Shaw* vs. *Picton,* 4 *B. & C.* 715. But the debtor need not declare the appropriation of it at the time of payment. It will be sufficient if it can be collected, from other circumstances, that he intended, at the time of payment, to appropriate it to one account specifically. *Shaw* vs. *Picton,* 4 *B. & C.* 715. It is also held that an appropriation by a creditor is not complete until the other party has been notified of it. *Simson* vs. *Ingham,* 2 *B. & C.* 65.

In the present case, when the receipt was given, on the 16th day of January, 1837, all the Presby notes were barred by the statute. No application of the sum for which the re-

ceipt was given was made on them until a year or more had elapsed from its date. The plaintiff's position is, that the defendant was not authorized to make the application upon the Presby notes, because they were due from Sawyer in his capacity as administrator. The defendant contends that the application might be made, as the administrator had assets and was authorized to sell property.

In the case of *Goddard* vs. *Cox, Strange* 1194, the defendant owed a debt on his own account, and also a debt due from his wife *dum sola*, and another debt due from her in her capacity as an executrix. He made several payments, generally upon account. The court held that the plaintiff might apply the money received to discharge the wife's own debt ; " but as to the demand against her as an executrix, the validity of which depended on the question of assets and the manner of administering them, was of opinion that the plaintiff could not apply any of the money paid by the defendant to the discharge of that demand." The reason, therefore, why the plaintiff could not thus apply the money, seems to have been, because it was uncertain whether there were any assets or not ; and also whether, if there had been any, they had been properly administered. There was nothing to show that the defendant had so conducted as to make himself personally responsible for the debt, nor is there in the present case. One debt was due from Sawyer personally ; the other as the administrator of Presby. He had procured a license to sell some of the property, and had sold some of it ; and there is evidence that he said at one time that Tappan could wait well enough for his debt. This seems to show that he did not intend to pay the Presby notes except from the avails of the estate. It does not show, either, that he considered himself individually liable, or that he was so in fact ; that he promised to pay them, or that he had been guilty of any maladministration. It is unnecessary to examine the numerous cases relating to the appropriation of payments. The decisions all proceed on

the ground that the debtor is individually liable for the several debts. Sawyer was not so liable for the Presby debt, and therefore Tappan had no authority to apply the payment in satisfaction of it.

But the defendant contends that the plaintiff's remedy on the receipt is barred by the statute of limitations. It was dated on the 16th day of January, 1837, and the suit was commenced in the month of February, 1843 ; after the lapse of more than six years. By the terms of the receipt, the money was to be applied on a note. We have already seen that Tappan was not authorized to apply it on the Presby notes, and therefore it was to be applied on Sawyer's personal debt. But it is very clear that the statute did not begin to run from the date of the receipt, for at that time no cause of action existed upon it against Tappan. The money was paid for a specific purpose, stated in the receipt. It was received in part payment of a note. It was not a sum which Tappan was immediately bound to repay; for if so, the transaction would have been futile, destitute of meaning, and opposed to the intention of the parties. A different state of facts might afterwards exist, by reason of which Tappan might become liable to repay the money; but such facts did not then exist. It is sufficient for the present question to say, that as the statute does not begin to run until the cause of action accrues, and as a cause of action did not accrue upon the giving the receipt, the plea of the statute cannot be supported. If the defendant should refuse, on a demand being made, to apply the money on the note upon which it might legally be applied, he would be liable to repay the money to the plaintiff, and a cause of action would then accrue. And it was competent for him to show, in support of his plea, that such a demand and refusal had been made before the 28th day of February, 1843, and that the plaintiff's remedy had been barred by the lapse of time. As there is no such evidence in the case, the plea cannot be supported.

Sawyer *v.* Tappan.

But in order to maintain the suit, the plaintiff must show that he has requested the defendant to apply the money on the note, and that he has refused so to do. He has offered evidence that he made such a demand in the year 1839, and that the defendant refused to make the application; but the witness by whom these facts were proved was the son and heir of Jabez Sawyer, and therefore incompetent from interest. It has been repeatedly settled that a witness is incompetent whose testimony tends to increase a fund in which he is entitled to participate. *Marland* vs. *Jefferson,* 2 *Pick.* 242; *Phœnix* vs. *Ingraham,* 5 *Johns'.* 427; *Stewart* vs. *Kip,* 5 *Johns.* 256; *Rudge* vs. *Ferguson,* 1 *C. & P.* 253; *Rex* vs. *Whiting,* 1 *Salk.* 283. A residuary legatee is not a competent witness for the executor who brings an action for a debt due the testator, because he receives an immediate benefit by a verdict for the plaintiff. *Doe* vs. *Tyler,* 6 *Bingh.* 390. And the present point has been directly settled in the case of *White* vs. *Derby,* 1 *Mass.* 238, and in *Vultee* vs. *Rayner,* 2 *Hall* (*N. Y.*) 376.

The witness, therefore, was improperly admitted.

*Verdict set aside.*