# SULLIVAN.

## JULY TERM, 1851.

---

## PARKS, BALDWIN, & PARKS v. INGRAM & PARKS.

The acceptor of a draft, or bill of exchange, cannot maintain an action for its recovery until he has paid the same, or done some act equivalent to payment. There is no form of action in which a suit can be sustained.

Where A accepted drafts on time, drawn by B for B's accommodation, and charged the same to B, at the time of making the acceptances; and afterwards, before the drafts fell due, and before he had paid the same, or done any act equivalent to payment, brought a suit against B to recover the amount, — held, that the action could not be sustained.

If the holder of a draft join in a general deed of assignment, made by the acceptor, of all his property, by which deed the acceptor is to be discharged from all his debts, the holder thereby loses his claim upon the drawer. But not, if the drawer assent to the assignment and sign the deed himself.

If a draft is accepted for the accommodation of the drawer, he stands in the antecedent position of principal upon the bill, and the acceptor in that of surety; and in such a case, the discharge of the acceptor by the holder, does not discharge the drawer.

When payments are made by a debtor, he has the right to direct their application. If he does not, the creditor may apply them to claims then due. But when no application is made by either, or the parties are not in a proper situation to make them, the law will apply them to the oldest legal claims then due.

A brought a suit on drafts accepted by him in favor of B, some of which were due and some not due; and afterwards, as the consignee of B, had certain funds of B come into his hands on the sale of goods belonging to B. Held, that the funds should first be applied to the payment of the drafts that were due, they being the oldest legal claims; and that A had no right to give them a different application.

ASSUMPSIT, on an account annexed to the writ, and the general counts for money paid, money had and received, goods sold

and delivered, work and materials, money lent, account stated, and interest due.

The plaintiffs were commission merchants, doing business in Boston, in the State of Massachusetts, and, since the year 1844, had sold broadcloths and other woollen goods, on commission for the defendants, who were manufacturers doing business in Newport in this State. The plaintiffs had from time to time accepted drafts drawn by the defendants, payable on time, and had applied the proceeds of the sales of the defendants' goods to reimburse themselves for payments made on such drafts. Accounts had been rendered from time to time, and for the last two years about once in three months, of the sales on account of the defendants and of the expenses and commissions, and the acceptances paid, and liabilities on unpaid acceptances of the plaintiffs. There were also occasional sales of wool and other merchandise from the plaintiffs to the defendants, which were charged in account together with the accepted drafts.

The writ bears date, August 1, 1848. The account annexed to the writ corresponded in all material points with an account rendered to the defendants, July 25, 1848, the date of the last charge. The balance claimed in the writ is $9,263.68.

At the time of the commencement of the action, the plaintiffs had accepted drafts drawn by the defendants, which had not become due and had not been paid, and which amounted to the sum of $6,369.11. These are included in the account annexed to the writ. The account for acceptances paid and merchandise sold and delivered, and for other things received by the defendants, independent of unpaid drafts, and including one draft of $525, afterwards returned, amounted to $5,023.59; and the credits to the defendants for proceeds of sales and other matters, amounted to $2,129.42, including a credit of $525, for the said draft of the defendants accepted by the plaintiffs, but afterwards returned to them. The defendants negotiated the drafts after acceptance in the regular course of business, and they are now held by third persons. Subsequently to the commencement of the suit and the negotiation of the drafts, the plaintiffs made an assignment of all their property to John Stearns, of Boston, in

Parks *v.* Ingram.

trust for the benefit of their creditors, and this action is now prosecuted by the assignee under the said assignment. The assignment was executed by the plaintiffs, the assignee, and the creditors of the plaintiffs ; and the latter agreed in said instrument as follows, namely, that they " do hereby accept and take the property and premises hereby assigned in full payment and satisfaction of all their respective claims and demands whatsoever, against the said firm, and they do and each of them doth hereby release, acquit, exonerate, and discharge the said Parks, Baldwin, and Parks, from each, all, and every claim and claims, demand and demands, of whatsoever nature and description, and whether absolute or contingent, which they, or either of them have or can have upon or against the said Parks, Baldwin, and Parks, by reason of any business transaction prior to the date of these presents; provided always that the lien or security of any creditors shall not be hereby released or impaired, but such creditors shall only be entitled to the benefit of those presents for the balance of his claim remaining after the application of such lien or security."

One dividend of twelve and a half per cent. has been paid by the assignee on all the claims proved, including the said unpaid drafts accepted by the plaintiffs.

At the time of the commencement of the action, the plaintiffs had in their possession goods of the defendants, consigned to them for sale, which were subsequently sold and an account rendered January 1st, 1849. The proceeds of the same after deducting charges for commission and guaranty, were $5,245.85.

The unpaid drafts were duly presented by the holders to the plaintiffs for payment, protested, and due notice given to the defendants to charge them as indorsers.

Some of the unpaid drafts were in the account rendered previous to August, 1848, amounting to $1,390.11. The others were accepted and charged on book, subsequently to April 1st, 1848.

Previously to the commencement of the action, drafts amounting to the sum of $1,750, had been accepted by the plaintiffs and negotiated by the defendants and the proceeds passed to the hands of the plaintiffs. These drafts were not included in the account annexed to the writ.

The parties agreed upon the foregoing statement of facts, for the purpose of taking the opinion of the Court, whether this action can be maintained for any sum, and if any, for what sum; and judgment was to be rendered accordingly. Thereupon the case was transferred to this Court for determination.

*Wheeler*, for the plaintiffs, contended, I. That the plaintiffs are entitled to recover the full amount of the balance claimed by them. The defendants' goods were merely forwarded to them for sale, and for the purposes of the sale they were the defendants' agents, and accountable for the proceeds in their hands after deducting charges and commissions. The defendants might set off any such balance against any debt due from them to the plaintiffs. But there is no set-off in this case, nor have the defendants any claim which can be treated as a payment of any portion of the plaintiffs' demand, excepting the sum credited in the plaintiffs' account. The unpaid drafts, which form a large part of the plaintiffs' claim, were accepted for the accommodation of the drawers, who are the defendants, and were by them negotiated, and the proceeds were of course received by them. And when thus accepted and negotiated, they may well be the foundation of a claim by the acceptors upon the drawers. And they were so treated by the parties, as appears by the accounts rendered. The money having been obtained by the defendants, on the credit of the plaintiffs' acceptance, it might, with good reason, be treated as money received of the plaintiffs, especially as the drawers do not appear to have objected. And this, notwithstanding the drafts have not been fully paid, and the defendants might have been liable as drawers until the holders joined in the deed of assignment. Whether the holders of the drafts will finally recover the full amounts of their claims of the plaintiffs or not, cannot now be known; nor is it material under the assignment.

II. But if the defendants are not liable in this action for the full amount of the unpaid drafts, the plaintiffs are still entitled to recover a large balance on their claim. After deducting all the credits, the balance due the plaintiffs, independent of unpaid drafts, is $2,894.17. The mere fact that the plaintiffs, as agents

Parks *v.* Ingram.

of the defendants, had in their possession goods of the value of over $5,000, while they were liable on acceptances for the defendants' accommodation, to a much larger amount, can be no defence to this action. Nor is it of any importance, that there were other drafts, amounting to $1,750, the proceeds of which were received by the plaintiffs, these being no part of the plaintiffs' claim.

*Cushing*, with whom was *Metcalf*, for the defendants. It will facilitate somewhat the investigation of this question, if we ascertain first, the actual state of the accounts and indebtedness between the parties.

The plaintiffs' balance of account at the date of the writ, for advances actually made, was $2,894.17. They have since paid on the acceptances, twelve and a half per cent. on $6,369.11, amounting to $796.14. They have received from the proceeds of the sale of the defendants' goods, the sum of $5,013.59. As far, then, as actual payments are concerned, the balance in favor of the defendants is $1,333.28.

The plaintiffs have assigned their property for the benefit of their creditors, and the defendants have, with the other creditors, executed the assignment. The effect which the plaintiffs, or their assignee, propose to produce, is this: If they can recover in this action, and satisfy their execution out of the property attached, the defendants will be left to take their dividend of twelve and a half per cent. on their claim. It is plain that the parties to the assignment could never have contemplated such a result. It is most obviously the common sense and justice of the matter, that the balance should be fairly struck, and that the defendants should receive a dividend on their balance. It appears to us in fact that the assignment itself amounts to an agreement that the sums received by the plaintiffs for the goods in their hands, should be applied in *payment* of the plaintiffs' claims. If it could be that the plaintiffs could recover a judgment and execution, the Court of Chancery would interfere by injunction, and prevent the levy of the execution, until the accounts had been properly liquidated, and their execution set off against the defendants' claim.

Parks *v.* Ingram.

The plaintiffs claim to consider the drafts accepted, but unpaid, as so much money received by the defendants at the time the drafts were accepted. It is said that the drafts being for the accommodation of the defendants, might well be considered as money received by the defendants, for which an action might at any time be commenced. But the contract between the drawer and accommodation acceptor is merely a contract of indemnity. The accommodation acceptor is merely a surety, and can have no further claim than for actual indemnity. *Young & Gill* v. *Hockley*, 3 Wils. 346 ; *Whitwell* v. *Brigham*, 19 Pick. 117 ; *Little* v. *Little*, 13 Pick. 426 ; *Hazeltine* v. *Guild*, 11 N. H. Rep. 390 ; *Bagnal & al.* v. *Andrews*, 7 Bingham, 217.

It is further said that the fact that the drafts were charged in account, and such mode of keeping accounts not objected to, proves that the drafts, when accepted, were to be considered as cash lent. The position of the plaintiffs is, that the fact that the plaintiffs charged the acceptances as soon as they gave them, and, as appears from the case, before any money was received by the defendants from them, and that this mode was adopted in rendering the accounts to the defendants, proves that the defendants had agreed that whenever the plaintiffs had given them an acceptance, it should be considered as so much *cash lent*, for which the plaintiffs might sue as they pleased.

That there is no such *presumption* in law, arising out of such facts is shown by the case of *Giles* v. *Perkins*, 9 East's Rep. 12. The most that can be pretended is that the facts are evidence tending to show that the drafts were to be treated as cash. It is evident from the whole manner of keeping the accounts, that the defendants could not have expected any such result. It is plain from the whole case that the plaintiffs were like other factors, assisting their customers with their *credit* and advances, and expecting to receive their pay from the proceeds of the sales. It is monstrous to draw such an inference as that contended for by the plaintiffs. And there is no need of such an inference, because the convenience of that mode of keeping the accounts, would be a sufficient reason for adopting it. So long as the parties continued solvent, it was a very convenient mode of keeping

Parks v. Ingram.

and rendering the accounts. If the accepted drafts were to be considered by the agreement and understanding of the parties as cash lent, for which the plaintiffs might at any time sue, it would follow that the plaintiffs would be bound at all events to pay the drafts, even if they had no assets, and that the defendants would have a right of action against them if they did not. This is not the relation of accommodation acceptors and drawers, and we think the plaintiffs would themselves shrink from any such result.

It is suggested that the plaintiffs by their assignment have paid the drafts, and so have a right to claim the whole sum of the defendants. But this cannot be so; because in the first place to the extent that the plaintiffs are accommodation acceptors, the drawers are to be considered as principals and the acceptors as sureties, and the release of the acceptor does not in such a case release the drawer. The defendants are still liable to the holders. *Rathbone* v. *Warner*, 10 Johns. 587 ; *King* v. *Baldwin*, 2 Johns. 554 ; *Woods* v. *Jefferson Co. Bank*, 9 Cowen, 194 ; *Auber* v. *Hale*, 4 Bing. 464 ; *Gould & al.* v. *Robson & al.*, 8 East's Rep. 576 ; *Walwyn* v. *St. Quintin*, 1 B. & P. 652 ; *Ex parte Wilson*, 11 Vesey, 410 ; *Collet* v. *Haigh*, 3 Camp. 281 ; *Bradford* v. *Hubbard*, 8 Pick. 155. Some of these cases are cited more particularly to show the general principle that the discharge of the surety does not discharge the principal. The acceptors and drawers are not joint promisors, so as to produce the technical effect of discharging the whole promise by discharging one promisor.

Secondly, the release of the acceptor does not in this case release the drawer, because the drawers, the defendants, by becoming parties to the indenture of assignment, have assented to the release of the acceptors, and a release of the acceptors under such circumstances does not release the drawers. *Smith* v. *Winter*, 4 Mees. & W. cited in Chitty on Bills, 416.

Thirdly, the drawers are not released, because it is expressly agreed in the assignment to which the defendants are parties, that no creditor shall lose or release any securities which he may have. The acceptances have not then been paid so as to relieve the defendants, and so far as they have no effects in the

acceptors' hands, they could have no remedy over against the acceptors.

The extent of the debit side of the account will be the amount which the plaintiffs have actually paid, and the utmost that they could sue for at the date of the writ will be the amount of balance actually existing at that time. But the plaintiffs have received from the sale of the defendants' goods, a much larger amount. Is it in law, or by the agreement and understanding of the parties, a payment?

First, as to the acceptances. The acceptance of a draft is *primâ facie* evidence that the acceptor has effects in his hands, and the burthen is on him to show that he has no effects, or that they are not to be applied in payment of the acceptances. This the plaintiffs do not do. *Kingman* v. *Hotaling*, 25 Wendell, 423; *Simmonds* v. *Parmenter & al.*, 1 Wils. 185.

Secondly, as to the remaining portion of the account. The plaintiffs are the factors of the defendants, and as such have a lien on the effects and proceeds in their hands for their general balance. It follows from this that the factor, if he retain the proceeds or effects, retains them in payment.

Thirdly. The assignment to which the plaintiffs and defendants are parties, amounts to an agreement that a balance shall be struck, and the claims of one party applied in payment of the claims of the other.

Fourthly. The manner in which the accounts are kept shows conclusively that the plaintiffs considered that the moneys passed to the defendants' credit were in payment. It follows that the whole of the plaintiffs' claim having been paid after the action was commenced, nothing can be recovered in damages. The costs are in the discretion of the Court.

EASTMAN, J. The facts presented in this case raise several questions for our consideration. The amount claimed is $9,263.68, being the sum alleged to be due from the defendants to the plaintiffs, August 1st, 1848, the date of the plaintiffs' writ. Of this sum, $6,369.11, were for drafts drawn by the defendants upon the plaintiffs and accepted by them; but

which, being on time, were not due at the commencement of the suit and had not been paid. At the time of their acceptance however, they were charged in the plaintiffs' books of account against the defendants. A large part of the plaintiffs' claim is therefore based upon these drafts ; and the first question which we propose to consider is, whether they can be recovered in this suit.

Bills of exchange, technically speaking, do not very generally enter into the business transactions of this State, and the particular liabilities of the parties to a draft or bill have not undergone very frequent discussions in our Courts. The principles, however, which govern this class of mercantile paper, appear to be well settled in those jurisdictions where the questions pertaining to it have come under consideration.

Ordinarily, a bill of exchange has, in the first instance, three parties to it, the drawer, the drawee, and the payee. It is not unusual, however, for the drawer to make the bill payable to his own order, and then indorse it and put it into circulation. The drafts in this case appear to have been drawn in that way. After the bill has passed by indorsement from the hands of the original parties to it, and becomes holden by those who are not privy to its inception and real consideration, the drawee, who is the acceptor, unless the bill shall have been dishonored by his refusal to accept it, is the party primarily holden; the drawer is the second who is liable, and the payee, who is the first indorser, is the third. *Baxton* v. *Peat*, 2 Camp. Rep. 155, note; *Smith* v. *Knox*, 3 Esp. Rep. 46. The contract of the acceptor, by his acceptance, is, that he will pay the bill, upon due presentment thereof, at its maturity, or its becoming due. The contract of the drawer, and of the indorsers, also, respectively is, not only that the bill shall be duly accepted, but that it shall be duly paid by the acceptor, upon due presentment for payment; and if not then paid, and due protest is made, and due notice of dishonor is given to them respectively, they will, upon demand, pay the bill, and also the damages and expenses accruing to the holder thereby. Story on Bills, § 323 ; Chitty on Bills, ch. 9, pp. 384, 385, 8th ed. While, then, ordinarily, the contract of the

acceptor is absolute, that of the drawer and indorsers is conditional. The holder has his remedy upon either party; but in order to charge the drawer and indorsers, he must make demand of payment upon the acceptor and notify the other parties. *Corvley* v. *Dunlop,* 7 Term Rep. 561; *Munroe* v. *Easton,* 2 Johns. Cases, 75; *Griffin* v. *Goff,* 12 Johns. Rep. 423; *Heylyn et al.* v. *Adamson,* 2 Burr. Rep. 669, 674.

So far as the holder of the bill is concerned, it is immaterial what may be the real and private relations existing between the drawer and acceptor in regard to it. He is to pursue the legal course to charge them, and has his remedy accordingly, regardless of their private undertakings to each other. But as between the drawer and drawee, their relations to each other may be materially changed, according to the character of the real transactions between them. Thus, where the drawer of the bill has, at the time of drawing it, funds in the hands of the drawee, upon the strength of which the draft is drawn and the acceptance made, the drawee occupies the position upon the bill that a maker does upon a note; his liability is absolute; and the drawer occupies the position of a surety. *Clark et al.* v. *Delvin,* 3 Bos. & Aul. 363, 366; Story on Bills, §§ 113, 119; *Munroe* v. *Easton,* 2 Johns. Cases, 75; *Berry* v. *Robinson,* 9 Johns. Rep. 121; *May* v. *Coffin,* 4 Mass. 341.

But where the drawee is a mere accommodation acceptor, and the drafts are drawn to facilitate the business transactions of the drawer, their positions are changed. The drawer stands in the position of maker and the drawee in that of surety. *Stedman* v. *Martinnant,* 13 East's Rep. 427; *Collott et al.* v. *Haigh,* 3 Camp. Rep. 281; *Young & Gill* v. *Hockley,* 3 Wils, 346; *Bagnal et al.* v. *Andrews,* 7 Bing. Rep. 217; Story on Bills, §§ 113, 119; *Whitwell* v. *Brigham,* 19 Pick. 117.

But whether the drawee be an accommodation acceptor or not, he cannot maintain an action upon a draft until he has paid it or done some act equivalent to payment. *Vanderheyden* v. *De Paiba,* 3 Wilson, 528; 2 Wm. Black. 839; *Young & Gill,* v. *Hockley,* 3 Wilson, 346; *Parker* v. *United States,* 1 Peter's C. C. Rep. 262; *Greenleaf* v. *Maher et al.* 2 Wash. C. C.

Rep. 44, 393 ; *Haseltine* v. *Guild*, 13 N. H. Rep. 390. In *Parker* v. *United States*, Mr. Justice *Washington*, says : " It is admitted by the counsel for the United States, that no case precisely like the present is to be found in the books ; that is, of an action for money had and received, brought by the acceptor of a bill of exchange before the same has been paid ; and I confess I should be greatly surprised if any decision to sanction such an action could be met with. If there be any case in which responsibility to pay money has been decided to afford a ground of action for money had and received, I have never met with it." And again : " It was never yet heard of that the acceptor of a bill of exchange, without funds of the drawer in his hands, was allowed to sue the drawer, without proving that he had paid the bill or done something equivalent thereto." " The cases are all the other way." Applying the foregoing principles to the facts before us, there would seem to be no doubt, that upon general grounds this suit cannot be maintained upon the unpaid drafts. Nor do we discover any thing in the fact, that the plaintiffs charged the drafts to the defendants as soon as accepted, that can change the defendant's liabilities. If such a principle were to be adopted ; if the acceptance and charging of the drafts could make the drawers liable and a suit at once be sustained upon them, notwithstanding they were not due and the acceptors had paid nothing thereon, then might the drawers be compelled to pay them twice ; once to the acceptors for their undertaking, and again to the holder, who, should he fail to receive the contents of the acceptors, might well seek his remedy against the drawers. The charging of the drafts may be matter of convenience, but it cannot alter the liabilities of the parties.

Neither are the plaintiffs aided by the transactions in regard to the assignment. The fact that the holders of the drafts signed a composition deed and agreed to discharge the acceptors upon certain terms, would have discharged the drawers from liability to them, if the drafts had been based upon funds in the hands of the drawees ; because in such case the liability of the drawees would be antecedent to that of the drawers, and the contract of discharge would be prejudicial to the interests of the drawers.

25 *

Parks v. Ingram.

*Ex parte* Wilson, 11 Ves. 410 ; *Lewis* v. *Jones*, 4 Barn. & Cress. 506 ; Story on Bills, § 429 ; *Scarborough* v. *Harris*, 1 Bay's Rep. 197 ; *Robertson et al.* v. *Vogle*, 1 Dall. Rep. 252 ; *Lynch* v. *Reynold*, 16 Johns. Rep. 41. But here the drawers having assented to the arrangement and signed the deed themselves, are estopped from saying that it is a contract to which they did not agree. In an action of the holders they could not successfully plead the discharge. *Bruen* v. *Marquand*, 17 Johns. Rep. 58. If a party agrees to the discharge of one liable before himself, he cannot afterwards take advantage of the discharge. *Bradford* v. *Hubbard*, 8 Pick. Rep. 155 ; *Smith et al.* v. *Winter*, 4 Mees. & W. 454.

But there is a further and complete answer to this position. These drafts having been drawn for the accommodation of the drawers, they are themselves principals on the bills. They occupy a position antecedent to that of the acceptors. The acceptors are the sureties, and any discharge of them by the holders cannot alter the liability of the principals. A discharge of a party to a bill does not affect the liability of those whose position is antecedent to the party discharged. It discharges only those who are subsequently liable. *Sargent* v. *Appleton*, 6 Mass. 85 ; *English* v. *Darley*, 2 Bos. & Pul. 61 ; 3 Esp. Rep. 49 ; *Mallet* v. *Thompson*, 5 Esp. Rep. 178 ; *Walwyn* v. *St. Quintin*, 1 Bos. & Pul. 652.

In the discussion of this point, we have considered the drafts in question as accommodation paper. It is not so stated in the case in distinct terms, but they are so treated by the counsel on both sides, and such, we presume, was their intention the Court should understand them to be, by the facts in the case.

So far, then, as the drafts which were not due at the time of the commencement of the suit, and which the plaintiffs had not paid, are concerned, the action cannot be sustained. The suit on them was prematurely brought. Striking out from the plaintiff's claim the amount of these drafts, and there is left the sum of $2,894.17, being for balance due on account of acceptances paid for the defendants, and goods sold to them prior to the commencement of the suit. Can the plaintiffs have judgment for that sum ?

At the time this suit was commenced, there were in the hands of the plaintiffs, independent of the credits given on the account rendered, goods of the defendants to the amount of $5,245.85, as subsequently ascertained, after deducting charges for commissions and guaranty in the sale. These goods were held by the plaintiffs as the agents or consignees of the defendants, to be accounted for after sale. They formed no fund until sale made, and therefore were not a subject of set-off at the time of the commencement of the action. The account of the sales appears to have been rendered in January, after the institution of the suit in August.

Had the unpaid drafts been specifically drawn upon those goods, the avails might perhaps have been appropriated to their liquidation; because a lien would thereby have been created upon the goods, and they could not afterwards be appropriated for any other purpose. *McMenomy et al.* v. *Ferrers,* 3 Johns. Rep. 71; *Peyton* v. *Hallet,* 1 Caines' Rep. 363; *Powell* v. *Gordon,* 2 Esp. 735; *Rowe* v. *Dawson,* 1 Vez. 331; *Yates* v. *Groves,* 1 Vez. jr. 280. But the drafts were general. At the time of the acceptances the goods were not even credited to the defendants, and no authority existed in the plaintiffs to appropriate them to the payment of paper which was not due, and for which they had themselves made no advances. Nor, upon the facts presented at the time the drafts fell due, and situated as these parties then were, could the funds arising from the sale of these goods be appropriated to the payment of the drafts, but, so far as necessary, they should go to the payment of the oldest legal claims. When a debtor makes a payment, he has a right to direct to what debt it shall be applied. In case he gives no direction, the creditor may make the application to claims then due. But where no application is made by either, the law will make the application to the oldest legal claim then due, if there is no particular equity or reason for a different course. *Caldwell* v. *Wentworth,* 14 N. H. Rep. 431; *Sawyer* v. *Tappan,* 14 N. H. Rep. 352. When these funds were received neither party was in a situation to make any particular application of the same. The defendants had been sued and did not know till

January after, where the funds were received; and the plaintiffs, if they had any right as assignees to make an application, assigned their property before making it. The law will therefore appropriate the funds upon the principles of the above authorities, to the extinguishment of the oldest legal claims then due. And such were those which went to make up the amount of $2,894.17, the claim now under consideration, being the balance sued for after deducting the unpaid drafts.

The sales of the goods amounted to $5,245.85, which sum far exceeds the balance of $2,894.17; and although these funds cannot be treated as a set-off, nor as a full bar to the plaintiffs' action under the present state of the pleadings, yet there is no objection to their consideration in the reduction of damages; and so much of the same as shall be necessary to pay, the plaintiffs' claim of $2,894.17, is properly to be applied for that purpose. *Pemigewassett Bank* v. *Brackett*, 4 N. H. Rep. 557; *Wagner* v. *Wagner*, 9 Barr. 214. The action therefore cannot be maintained for any sum in damages. The costs will be regulated by the Court below.